IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 17-cr-00157-DKW-6 |
| Plaintiff, | |
| | **ORDER DENYING DEFENDANT'S MOTION FOR A SENTENCE REDUCTION** |
| vs. | |
| ZACHARY TUFELE, | |
| Defendant. | |

Inmate Zachary Tufele filed a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1), Dkt. No. 350, arguing that "the presence of COVID-19" at the facility where he is incarcerated, combined with his particular health conditions (obesity, diabetes, and hypertension), constitute "extraordinary and compelling" reasons to warrant authorizing him to serve the remaining 18 months of his 41-month sentence "on home detention." Dkt. No. 350 at 1, 33; *id.* at ¶ 54.

Aside from the fact that the Court is not authorized to place Tufele on home confinement, *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011); 18 U.S.C. § 3621(b), Tufele has not demonstrated that the requisite "extraordinary and compelling" circumstances exist because, despite his claimed health conditions, there are only three positive COVID-19 cases among the inmate population at the

facility where Tufele is housed.  Because there is nothing "extraordinary and compelling" about Tufele's current situation,[1] his motion is DENIED.

## FACTUAL & PROCEDURAL BACKGROUND

### A.  Relevant Factual Background

On September 21, 2018, Defendant Zachary Tufele pled guilty to conspiracy to distribute, and to possess with the intent to distribute, one kilogram or more of heroin and oxycodone in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C).  Dkt. No. 231, ¶¶ 1, 6; Dkt. No. 234.  On January 15, 2019, this Court sentenced Tufele to 41 months' imprisonment, followed by 5 years of supervised release.  Dkt. Nos. 257–59.

In imposing this sentence, the Court adopted the presentence investigation report (PSR) in full, Dkt. No. 259 at 1, which indicates Tufele is 5 feet 11 inches tall and weighs 400 pounds (Body Mass Index of 55.8).  Dkt. No. 252, ¶ 51.  The PSR also states that Tufele "advised that he is healthy, has no history of health problems, does not take any prescription medication, and has no allergies to food or medication."  *Id.* at ¶ 52.  Roughly twenty months later, Tufele now claims (without providing any medical documentation) that, in addition to "morbid obesity," he also

---

[1] *See* 18 U.S.C. § 3582(c)(1); U.S.S.G. § 1B1.13 cmt. n.1.

suffers from "hypertension" and an unspecified type of "diabetes."  Dkt. No. 350 at 3, 17, 22, 33, 55.[2]

Tufele is currently 27 years of age and incarcerated at Terminal Island FCI.[3] Tufele has served approximately 18 months of his 41-month sentence and, assuming good conduct, is scheduled to be released on February 24, 2022.[4]

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)).  Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).  Congress carved out such an exception in 18 U.S.C. Section 3582(c)(1), as amended by the First Step Act of

---

[2]Tufele asserts that he requested his medical records from the Federal Bureau of Prisons (BOP), but has not received the records.  Dkt. No. 350 at 3 n.3.  Although the Government notes that it attached "portions" of the medical records to its opposition brief, Dkt. No. 354 at 12 n.2, no such records are attached.  The Government also filed a motion to seal Tufele's medical records, Dkt. No. 355, but did not file "a copy of the proposed sealed filing," as required by Local Rule 5.2(c)(1).  The Court granted the Government's motion to seal and stated that "[t]he Government may file the above-referenced medical records under seal." Dkt. No. 357.  As of the date of this Order, however, Tufele's medical records have not been filed by either the Government or Tufele.
[3]*Find an Inmate*, FEDERAL BUREAU OF PRISONS (BOP), https://www.bop.gov/inmateloc/ (last visited Aug. 29, 2020).
[4]*Id*.  The Court allowed Tufele to self-surrender to a facility to be designated by the BOP on February 26, 2019, Dkt. No. 258 at 2, and he did.

2018 (FSA), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).[5]   Under

Section 3582(c)(1), courts may "modify a term of imprisonment" where, as here, the

inmate files a motion, if three requirements are satisfied:

> (1) the inmate "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion" on behalf of the inmate "or the lapse of 30 days from the receipt of such a request" by the relevant warden;[6]
>
> (2) the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and
>
> (3) the court has "consider[ed] the factors set forth in [18 U.S.C. Section] 3553(a)" and found that the inmate is "not a danger to the safety of any other person or the community, as provided under [18 U.S.C. Section] 3142(g)."

See 18 U.S.C. § 3582(c)(1); U.S.S.G. § 1B1.13 (policy statement).   The inmate bears

the burden of establishing the requirements for a sentence reduction by a

preponderance of the evidence.   See, e.g., United States v. Sprague, 135 F.3d 1301,

1306–07 (9th Cir. 1998); see also United States v. Jones, 836 F.3d 896, 899 (8th Cir.

2016); United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013); Walton v.

Ariz., 497 U.S. 639, 650 (1990) (holding that a defendant's due process rights "are

not violated by placing on him the burden of proving mitigating circumstances

---

[5]The FSA amended the *procedural requirements* under Section 3582(c)(1)(A) to permit inmates to directly petition courts for a sentence reduction, whereas pre-amendment, an inmate could only petition the BOP Director, who then had the discretion to move the court to reduce the inmate's sentence based upon "extraordinary and compelling reasons."  See FSA § 603(b), 132 Stat. at 5239; U.S.S.G. § 1B1.13 cmt. n.4.; see also United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).
[6]The Government concedes that Tufele has satisfied the statutory exhaustion requirements.  Dkt. No. 354 at 4.

- 4 -

sufficiently substantial to call for leniency."), *overruled on other grounds by Ring v. Ariz.*, 536 U.S. 584, 609 (2002).

## DISCUSSION

The parties contest only the second and third requirements for a sentence reduction under Section 3582(c)(1), as outlined above.  For the reasons that follow, the Court does not reach the third requirement because Tufele has not shown that "extraordinary and compelling reasons" exist.

## I.     Extraordinary and Compelling Reasons

Section 3582(c)(1) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons" and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" (the "Commission").   Although Tufele purportedly has health conditions that put him at a high risk of becoming seriously ill from COVID-19 (severe obesity and type 2 diabetes), he has not shown that there is a high risk he *will* become infected; nor has he shown that, if he did become infected, his ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" such that he would "not [be] expected to recover."  *See* U.S.S.G. § 1B1.13 cmt. n.1(A).

## A.     The Commission's Commentary in U.S.S.G. § 1B1.13 Defining "Extraordinary and Compelling" is Binding on Federal Courts

Congress did not delineate the bounds for what constitutes "extraordinary and compelling," except to state that "[r]ehabilitation of the defendant alone" is not

enough.   28 U.S.C. § 994(t).   Instead, Congress directed the Commission to promulgate policy statements "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id.* The Commission did just that under Application Note 1 to U.S.S.G. § 1B1.13, albeit prior to the enactment of the FSA.   The Commission outlined the following four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction:

> (A) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition "that substantially diminishes" the inmate's ability "to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";

> (B) the defendant is at least 65 years old, is "experiencing a serious deterioration in physical or mental health because of the aging process," *and* "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less";

> (C) family circumstances involving "the death or incapacitation of the caregiver of the defendant's minor child," or the "incapacitation of the defendant's spouse or registered partner," leaving the inmate as "the only available caregiver for the spouse or registered partner"; or

> (D) "[a]s determined by the Director of the [BOP]," in the inmate's case there is "an extraordinary and compelling reason other than, or in combination with," the other three reasons described.

*See* U.S.S.G. § 1B1.13 cmt. n.1.

Several district courts have concluded (as Tufele urges this Court to do) that because the policy statement is "outdated" and does not account for the fact that an

inmate may now seek relief directly from the court,[7] the definition of "extraordinary and compelling" is no longer limited to the examples set forth in the Commission's policy statement above, and courts are free to independently make that determination.[8]  *See* Dkt. No. 350 at 20 & n.43.  But as Tufele acknowledges, Dkt. No. 358 at 3–4, this Court has repeatedly declined to subscribe to that freewheeling approach to compassionate release.  *See, e.g.*, *United States v. Aruda*, No. 14-CR-00577-DKW, 2020 WL 4043496, at *3 (D. Haw. July 17, 2020); *United States v. Kealoha*, No. CR 04-00265, 2020 WL 3735773, at *5–6 (D. Haw. July 6, 2020); *United States v. Kazanowski*, No. 15-CR-00459, 2020 WL 3578310, at *6 (D. Haw. July 1, 2020); *United States v. Lum*, No. 18-CR-00073, 2020 WL 3472908, at *3 (D. Haw. June 25, 2020).

Courts are not at liberty to treat the Commission's commentary as merely "persuasive," "of only limited authority," or "not binding on the federal courts." *Stinson v. United States*, 508 U.S. 36, 39, 44–47 (1993) (citation omitted).  In *Stinson*, the Supreme Court announced "the standard that governs the decision whether particular interpretive or explanatory commentary is binding." *Id.* at 43. There, the Court explained:

---

[7]The Commission "has not amended the Guidelines following the First Step Act and cannot do so until it again has four voting commissioners." *Brown*, 411 F. Supp. 3d at 449 (citations omitted)).

[8]*Rodriguez*, 424 F. Supp. 3d at 681 (collecting cases); *United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 18, 2020) (collecting cases).

> The Sentencing Commission promulgates the guidelines by virtue of an express congressional delegation of authority for rulemaking, and through the informal rulemaking procedures. Thus, the guidelines are the equivalent of legislative rules adopted by federal agencies. The functional purpose of commentary (of the kind at issue here) is to assist in the interpretation and application of those rules, which are within the Commission's particular area of concern and expertise and which the Commission itself has the first responsibility to formulate and announce. In these respects this type of commentary is akin to an agency's interpretation of its own legislative rules. As we have often stated, provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation."

*Stinson*, 508 U.S. at 44–45 (internal citations omitted) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). Thus, the Court held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 38.[9]

Applying *Stinson*, Application Note 1 to U.S.S.G. § 1B1.13 is binding on federal courts. The FSA only amended the *procedural requirements* under Section 3582(c)(1). *See supra* n.5. An inmate may now personally petition a court under Section 3582(c)(1). The mere fact that the Commission has not accounted for this

---

[9] Although *Stinson* was decided before *United States v. Booker*, 543 U.S. 220, 246 (2005), in which the Supreme Court held that the Guidelines are advisory, not mandatory, the Supreme Court later held in *Dillon* that *Booker* is inapplicable in sentence-modification proceedings under 18 U.S.C. § 3582(c)(2) because such proceedings are fundamentally different, *see Dillon v. United States*, 560 U.S. 817, 828–30 (2010), and, as such, the relevant Guidelines policy statement "constrained" courts. *See id.* at 825–27. The same rationale applies to Section 3582(c)(1), the companion statutory provision to the one addressed in *Dillon*.

change in U.S.S.G. § 1B1.13 simply means a court must nevertheless entertain a motion from an inmate.  But this does not nullify the Commission's entire policy statement or the commentary defining "extraordinary and compelling," nor does it somehow render that guidance "outdated."  *See* 18 U.S.C. § 3553(a)(5) (any "pertinent policy statement" is to be considered "subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into the amendments issued under section 994(p) of title 28.").  Tufele's contention that the Commission did not anticipate a "global pandemic" in drafting U.S.S.G. § 1B1.13, Dkt. No. 358 at 4; Dkt. No. 350, ¶ 31, does not mean Application Note 1 to U.S.S.G. § 1B1.13 violates Section 3582(c)(1) or is "inconsistent with, or a plainly erroneous reading of, that guideline."  *Stinson*, 508 U.S. at 38.  Moreover, Congress did not alter the meaning of "extraordinary and compelling" in the statute; it has not revoked the Commission's authority to define that phrase; and six months into the advent of COVID-19, Congress has not amended U.S.S.G. § 1B1.13.  *See Mistretta v. United States*, 488 U.S. 361, 393–94 (1989) (Congress may "revoke or amend any or all of the Guidelines" by statute "at any time").

Therefore, because Application Note 1 to U.S.S.G. § 1B1.13 does not run afoul of the Constitution or a federal statute, and is not "plainly erroneous or inconsistent" with Section 1B1.13, the Commission's "commentary is a binding

interpretation of the phrase '[extraordinary and compelling].'"  *Stinson*, 508 U.S. at 47; *see also Dillon*, 560 U.S. at 824 (explaining that a district court's discretion to modify a sentence under Section 3582(c)(2) is "constrained by the Commission's statements").[10]  As a result, it is not the federal courts' prerogative to help Congress and the Commission rewrite Section 3582(c)(1) or U.S.S.G. § 1B1.13.  In so holding, the Court is among the legion of district courts that, for various reasons, "continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of 'extraordinary and compelling reasons' that warrant compassionate release under § 3582(c)(1)."[11]

## B.    Analysis: Extraordinary and Compelling Reasons

Tufele argues his circumstances rise to the level of "extraordinary and compelling" because, should he contract COVID-19, he is at a "higher risk of serious illness or death" due to his "medical vulnerabilit[ies]"; namely, "hypertension,

---

[10]Numerous courts have appropriately turned to *Stinson* and reached the same conclusion.  *See, e.g.*, *United States v. Garcia*, No. 4:05-CR-40098, 2020 WL 2039227, at *3–5 (C.D. Ill. Apr. 28, 2020); *United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *3–4 (W.D. Wash. June 10, 2020) (citing nine other decisions); *United States v. Rollins*, No. 99 CR 771-1, 2020 WL 3077593, at *1–2 (N.D. Ill. June 10, 2020) (explaining further that Application Note 1(D) to U.S.S.G. § 1B1.13 is not inconsistent with § 3582(c)(1)(A)(i) because it may still be "applie[d] with full force if the *Director* invokes it in moving for a sentence reduction" and the "fact that Note 1(D) is unavailable if the *defendant* moves for a sentence reduction does not render it inconsistent with § 3582(c)(1)(A)(i); rather, Note 1(D) is simply inoperative in that circumstance").

[11]*See, e.g.*, *Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020); *Eberhart*, 2020 WL 1450745, at *2; *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. March 31, 2020); *United States v. Gross*, No. 2:04-CR-032-RMP, 2019 WL 3538967, at *2 (E.D. Wash. Aug. 2, 2019); *United States v. Shields*, No. 12-CR-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019).

morbid obesity[,] and diabetes." *See* Dkt. No. 350 at ¶¶ 27, 29, 35–36, 55.  In that regard, the only relevant "extraordinary and compelling" scenario identified by the Commission is subpart (A) of the Commission's application note.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A).[12]  Tufele's circumstances, however, are insufficient.

Although the Court acknowledges that there is a heightened risk for the virus to spread in correctional facility environments,[13] standing alone, these concerns about possible exposure to COVID-19 in the abstract are not enough to warrant an inmate's early release.  *See, e.g.*, *Raia*, 954 F.3d at 597; *Riley*, 2020 WL 1819838, at *7 (collecting cases).  That type of general concern is shared by the public at large, as well as all incarcerated individuals.

Rather, to establish "extraordinary and compelling reasons" stemming from the current coronavirus pandemic, and for such a finding to be consistent with Application Note 1 to U.S.S.G. § 1B1.13, an inmate must necessarily establish the following three elements by a preponderance of the evidence: (1) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition; (2) that condition puts the inmate at a high risk of becoming seriously ill from

---

[12]Tufele does not contend that the Director of the BOP has determined that there exists in this case some "other" extraordinary or compelling reason for a reduction in sentence.  *See* U.S.S.G. § 1B1.13 cmt. n.1(D); *Rollins*, 2020 WL 3077593, at *1–2.

[13]*See generally Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Aug. 31, 2020).

COVID-19; and (3) if the inmate were to contract COVID-19, the inmate's ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and the inmate would "not [be] expected to recover." *See, e.g.*, U.S.S.G. § 1B1.13 cmt. n.1(A); *Aruda*, 2020 WL 4043496, at *5; *Kealoha*, 2020 WL 3735773, at *7. Though Tufele fails to satisfy only the last prong, other observations are worthy of mention.

First, only two of Tufele's asserted health conditions satisfy the first and second prong. The CDC has stated that individuals at an "increased risk of severe illness from COVID-19" include people "aged 65 years and older,"[14] as well people of all ages with the following underlying health conditions: (i) "Chronic kidney disease"; (ii) "COPD (chronic obstructive pulmonary disease)"; (iii) "Immunocompromised state (weakened immune system) from solid organ transplant"; (iv) "Obesity (body mass index [BMI] of 30 or higher)"; (v) "Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies"; (vi) "Sickle cell disease"; and (vii) "Type 2 diabetes mellitus."[15]

---

[14] *See Coronavirus Disease 2019 (COVID-19): People at Increased Risk for Severe Illness – Older Adults*, CDC (Aug. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 31, 2020).

[15] *See Coronavirus Disease 2019 (COVID-19): People at Increased Risk for Severe Illness – People with Certain Medical Conditions*, CDC (Aug. 14, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 31, 2020). The CDC also notes that people with the following conditions "*might* be at an increased risk for severe illness from COVID-19": Asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state (weakened immune system)

Tufele asserts that he suffers from "hypertension, morbid obesity[,] and diabetes." *See* Dkt. No. 350 at ¶¶ 3, 29, 35–36, 55.

As a result, while Tufele's "morbid obesity" (BMI of 55.8), Dkt. No. 252, ¶ 51, is a CDC-risk factor, his hypertension is not because that condition is only identified by the CDC as something that "might" present an enhanced risk. *Supra* n.15. Not every physical or cognitive condition can be a risk factor if "extraordinary and compelling" is to have any meaning. As for the unknown type of diabetes Tufele allegedly suffers from, Tufele does not assert that he has "type 2 diabetes," much less provide any evidentiary support that he is a diabetic. Notwithstanding this evidentiary gap in the record, *see supra* n.2, the Government appears to concede that Tufele has type 2 diabetes. *See* Dkt. No. 354 at 11. The Court will therefore assume Tufele currently has *two* qualifying health conditions that put him at a high risk of becoming seriously ill from COVID-19 (type 2 diabetes and obesity).

Second, in order for Tufele's type 2 diabetes and obesity (or any of his conditions) to matter, insofar as an "extraordinary and compelling" finding is concerned, Tufele must (at the very least) show that there is a high risk of contracting

---

from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); smoking; thalassemia (a type of blood disorder); and type 1 diabetes mellitus. *Id.* (emphasis added).

the virus because there are positive COVID-19 cases at the facility where he is housed.  Tufele has not done so.

Here, the risk of Tufele contracting COVID-19 at Terminal Island FCI is but a remote and speculative possibility.  That facility currently houses a total of 913 inmates.[16]  While the facility once had a high number of confirmed coronavirus cases, that is not the current situation.  As of the date of this Order, the BOP's coronavirus-related data for Terminal Island FCI indicates there are: 3 inmates positive; 0 staff positive; 10 inmate deaths; 0 staff deaths; 627 inmates recovered; and 23 staff recovered.[17]  In other words, the number of positive cases at Terminal Island FCI is approximately 0.3% of the inmate population.  Section 3582(c)(1), however, generally covers only an inmate's circumstances that are likely "terminal," "serious," and otherwise permanent.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). Therefore, in the face of the statistics for Terminal Island FCI, Tufele's inchoate speculation about the possibility of contracting the virus is hardly enough to justify his immediate release.

---

[16] *FCI Terminal Island*, BOP, https://www.bop.gov/locations/institutions/trm/ (last visited Aug. 31, 2020).

[17] *See COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Sept. 1, 2020).  On this public website containing the coronavirus-related data for BOP facilities, the BOP notes that it  "will update the open COVID-19 confirmed positive test numbers, recoveries, and the number of COVID-19 related deaths daily at 3:00 p.m.," and because the BOP "has begun additional testing of asymptomatic inmates to assist in slowing transmissions within a correctional setting," the data is expected to reflect an increase in the number of COVID-19 positive tests.  *Id.*

Lastly, even if a large portion of the Terminal Island FCI inmate population was infected with COVID-19, Tufele has not shown that, should *he* contract the virus, Terminal Island FCI is any less equipped to treat him than if he were not incarcerated. Tufele says little on this, other than repeat his generalized fear of COVID-19 in the dormitory-like setting in which he lives at Terminal Island FCI. Dkt. No. 350 at 14. To the contrary, in collaboration with the CDC and the World Health Organization (WHO), the BOP has taken extensive efforts to curtail the spread of the virus; including, *inter alia*, suspending social visits; suspending inmate transfers; testing inmates who arrive at a BOP facility; suspending legal visits (with some exceptions); implementing enhanced health screening of staff; quarantining symptomatic inmates; suspending tours; limiting inmates "in their movements to prevent congregate gathering and maximize social distancing"; and completing an inventory of personal protective equipment at all BOP locations with the BOP continuing to "stockpile."[18] As such, the BOP's preventive measures are as extensive, if not more, than those implemented in cities and states. And nothing in the record establishes that Tufele is not being properly cared for at Terminal Island

---

[18]*See generally BOP Implementing Modified Operations*, BOP, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Aug. 31, 2020); *A BOP COVID-19 Overview*, BOP, https://www.bop.gov/coronavirus/overview.jsp#bop_emergency_response (last visited Aug. 31, 2020).

FCI.  Conditions that can be managed in prison are not a basis for compassionate release.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A); *Kealoha*, 2020 WL 3735773, at *7.

Because Tufele has not carried his burden of showing that there are "extraordinary and compelling reasons" to justify his early release under 18 U.S.C. § 3582(c)(1), he is not entitled to a sentence reduction.

Tufele's motion fails for the additional reason that the Court cannot grant the relief he seeks.  Tufele makes clear that he "does not seek a reduction in sentence to 'time-served,' but rather [seeks] designation of home confinement for the remainder of his sentence."  Dkt. No. 350 at 1, 32; *id.* at 28 ("Defendant is asking the court to sentence him to home confinement for a term to equal to [*sic*] his remaining sentence, to be followed [by] the currently-imposed term of supervised release."); *id.* at 33 ("Defendant should be resentenced to home confinement.").  The Court lacks the authority to do so.

By its terms, Section 3582(c)(1)(A) only permits a court to "reduce the term of imprisonment."  "The [BOP] has the statutory authority to choose the locations where prisoners serve their sentence."  *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (citing 18 U.S.C. § 3621(b) ("The [BOP] shall designate the place of the prisoner's imprisonment.")); 18 U.S.C. § 3624(c)(2) (establishing the BOP's authority to place an inmate in "home confinement").  Tufele acknowledges as much in his motion.  Dkt. No. 350, ¶ 54.  Tufele's proposed solution is that the Court

should follow a handful of other courts by "reducing [his current sentence to time served, expanding the supervised release term [to include his remaining 18 months' imprisonment], and imposing a condition of home confinement on the expanded supervised release term." *Id.*; *see also id.* at ¶ 52. The Court rejects this novel endeavor. That rationale is a transparent attempt to usurp the BOP's statutory authority by circumventing Congress' intent under Sections 3624(c)(2) and 3582(c)(1)(A).

To be sure, on March 26, 2020, U.S. Attorney General William Barr directed the BOP Director to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic."[19] The following day, Congress granted the BOP Director the authority to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under . . . [18 U.S.C. Section] 3624(c)(2)]," so long as "the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau." *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 515–17 (2020). In response, "the BOP began immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC, to determine

---

[19]Memorandum from Attorney Gen. to Director of Bureau of Prisons, *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), https://www.justice.gov/file/1262731/download.

which inmates are suitable for home confinement.  Since the release of the Attorney General's original memo to the Bureau of Prisons . . . instructing [the BOP] to prioritize home confinement as an appropriate response to the COVID-19 pandemic, the BOP has placed 7,559 inmates on home confinement."[20]  Of course, a sentencing court may make a "non-binding" recommendation to the BOP regarding where an inmate's sentence should be served.  *Ceballos*, 671 F.3d at 855 (citing 18 U.S.C. § 3621(b)).  As a discretionary matter, however, the Court declines to make such a recommendation to the BOP in the instant case because of the circumstances described above.

## CONCLUSION

For the reasons set forth herein, Tufele's motion for a sentence reduction, Dkt. No. 350, is DENIED.

IT IS SO ORDERED.

DATED: September 1, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*United States v. Zachary Tufele*; Cr No. 17-00157-DKW-6; **ORDER DENYING DEFENDANT'S MOTION FOR A SENTENCE REDUCTION**

---

[20]*COVID-19 Coronavirus: COVID-19 Home Confinement Information*, BOP, https://www.bop.gov/coronavirus/ (last visited Aug. 31, 2020).